932 F.2d 1563
 33 Fed. R. Evid. Serv. 102
 GARNAC GRAIN CO., INC., Appellant/Cross-Appellee,
v.
F. Duane BLACKLEY, Donald A. Blackwell, Frederick M.
Borchardt, Stephen G. Butler, Stephen P. Clark, Ralph W.
Clermont, R. Bruce Earls, John O. Eichhorn, Leland R.
Gerhart, Martin F. Gleason, Jr., Robert J. Graham, Jeffrey
H. Green, J. Alan Harkness, Johnnie G. Henson, Merrill A.
Joslin, Jr., James B. Judd, Robert E. Lawson, Lawrence J.
Legrand, Richard D. Love, H. Max Lummis, IV, Edward W.
Mehrer, Cecil R. Miller, Jack A. Newman, Jr., Clifford L.
Olson, Charles W. Peffer, David C. Potter, Brooks R. Read,
Daniel S. Reilly, A. John Robertson, Jr., William M. Rowe,
Jr., Richard J. Sabolik, Joseph R. Sims, Robert W.L.
Spencer, Dennis M. Stevens, James M. Stolze, Richard A.
Toftness, Richard C. Vaughan, Buddy L. Vick, Michael J.
Walters, Appellees/Cross-Appellants,
Kathryn A. Millison, Third-Party Defendant.
 Nos. 90-1890, 90-1930.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 7, 1991.
Decided May 17, 1991.
As Modified on Denial of Rehearing
July 30, 1991.
 
 A. Bradley Bodamer, Overland Park, Kan., for appellant/cross-appellee.
 Paul Scott Kelly, Jr., Kansas City, Mo., for appellees/cross-appellants.
 Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 Garnac Grain appeals several rulings of the District Court culminating in the dismissal of its accounting-malpractice and breach-of-contract claims against partners of the accounting firm Peat, Marwick, Mitchell & Company.[1] We affirm in part and reverse in part.
 
 I.
 
 2
 The events leading to this litigation began in March 1976, when an employee in Garnac's Kansas City office, Kathryn Millison, began embezzling from her employer. Millison accomplished most of her embezzlement by intercepting outgoing Garnac checks payable to vendors, adding her husband's name to the check as a payee, endorsing the check in her husband's name, and depositing the money in their joint bank account. When the cancelled checks arrived in Garnac's bank statement, Millison intercepted the statement, erased her husband's name as payee and his endorsement, and then forged the endorsement of the original payee. Millison continued this scheme undetected until September 1982. Over the course of more than six years, she embezzled a total of approximately $3.4 million.
 
 
 3
 After discovering Millison's embezzlement, Garnac hired the accounting firm of Price Waterhouse to determine the extent of its losses. During its review of Garnac's books, Price Waterhouse began investigating whether Garnac's accountants since 1948, Peat, Marwick, had violated Generally Accepted Auditing Standards ("GAAS") for the fiscal years ending January 31, 1977 through January 31, 1982, by failing to discover Millison's embezzlement. Thinking that Price Waterhouse was merely determining the extent of the loss, Peat, Marwick cooperated with the investigation. It gave Price Waterhouse access to its audit work papers for the years in question. Only belatedly did Peat, Marwick realize that the investigation extended to its own auditing procedures, but it nevertheless continued to cooperate with Price Waterhouse. After writing several preliminary drafts with contradictory conclusions, on October 12, 1983, Price Waterhouse issued a final report containing its opinion that Peat, Marwick failed to comply with GAAS for the fiscal year ending January 31, 1982, but not for any of the previous years.
 
 
 4
 On June 29, 1984, Garnac sued Peat, Marwick for negligence and breach of contract for failing to comply with GAAS for the fiscal years ending January 31, 1977 through January 31, 1982. Garnac claimed that Peat, Marwick's errors precluded it from discovering and preventing Millison's embezzlement. Garnac sought recovery of the approximately $3.4 million plus prejudgment interest. Peat, Marwick brought a third-party complaint against Millison, her bank which had cashed the altered checks, and four other banks, seeking contribution for any loss attributed to it.[2] Peat, Marwick also counterclaimed against Garnac, asserting that Garnac's agent, Price Waterhouse, violated a contract implied in fact by failing to provide Peat, Marwick with preliminary drafts of its report.
 
 II.
 
 5
 Although Price Waterhouse concluded that Peat, Marwick violated GAAS only for the fiscal year ending January 31, 1982, Garnac sued Peat, Marwick for the entire period of Millison's embezzlement. Garnac concedes that demonstrating violations of GAAS requires expert testimony, which Price Waterhouse's report does not provide for fiscal years prior to that ending January 31, 1982. It therefore sought additional experts to opine that Peat, Marwick violated GAAS for the remaining periods.
 
 
 6
 Garnac identified four individuals who would supply its expert testimony. Peat, Marwick moved both to exclude the testimony of these witnesses and for summary judgment on Garnac's pre-1982 claims. The District Court granted the motions, concluding Garnac had a prima facie case only for the fiscal year ending January 31, 1982.
 
 
 7
 Two of Garnac's proposed experts are Garnac employees: Peter Stettler, its current president and former executive vice-president, and Bill Bosilevac, its director of accounting. The District Court concluded that these two witnesses are not qualified under Federal Rule of Evidence 702 to provide expert testimony that Peat, Marwick failed to comply with GAAS. Finding no abuse of discretion, we affirm. Although Bosilevac is Garnac's director of accounting, he attended only one year of college, and has taken only a few noncredit night courses in auditing and accounting. He is not a certified public accountant. Peter Stettler similarly lacks formal training in accounting or auditing. While he has a business degree, he has never taken courses in auditing or internal controls, has had only a basic accounting course, and is not a certified public accountant.
 
 
 8
 We are mindful of Rule 702 and our own case law's recognition of practical knowledge and experience as providing an adequate basis for expert testimony. See, e.g., Circle J Dairy, Inc. v. A.O. Smith Harvestore Products, Inc., 790 F.2d 694, 700 (8th Cir.1986). The deposition testimony of these witnesses, however, indicates that their practical knowledge does not provide them with the requisite expertise in auditing or accounting. At Peter Stettler's deposition, for example, he stated that he does not know "exactly" what "generally accepted accounting principles" means. Joint Appendix at 519. He also indicated that he is uncertain how to determine whether a check is "suitably endorsed." Id. at 525. Although Bosilevac has worked in Garnac's accounting department for approximately twenty-two years and helped implement some of its internal controls, his testimony reveals that he has specialized knowledge of Garnac and its operations, not auditing or GAAS.
 
 
 9
 Our decision to affirm the District Court's exclusion of the expert testimony of Bosilevac and Peter Stettler does not extend, however, to the exclusion of the testimony of another proposed Garnac expert witness: Howard Stettler.[3] Stettler is a professor who has retired from teaching at the School of Business at the University of Kansas. Garnac hired Stettler to oppose Peat, Marwick's motion for summary judgment by providing expert testimony that Peat, Marwick violated GAAS for all the audit years in dispute. On August 30, 1988, the District Court granted Peat, Marwick's motion in limine to exclude Professor Stettler's expert testimony.
 
 
 10
 In its decision to exclude Stettler's testimony, the District Court relied on Federal Rules of Evidence 702, 703, and 403. The Court found that Professor Stettler lacked the qualifications to testify as an expert under Rule 702. Although Professor Stettler taught auditing courses for almost forty years at the University of Kansas, he worked only as a staff assistant at an auditing firm for four years in the 1940's. He has no experience in auditing grain operations like Garnac's, has never reviewed another auditor's work, and his license as a certified public accountant expired in 1981.
 
 
 11
 As additional support for its decision, the District Court concluded that the basis of Stettler's opinion was unreliable under Rule 703. Professor Stettler concluded in a report dated July 12, 1985, that Peat, Marwick violated GAAS after reading only Price Waterhouse's report. Not only did Price Waterhouse reach conclusions contrary to Stettler's for five of the six audit years, but it expended considerably more effort in reaching its conclusions. Price Waterhouse spent approximately 600 hours preparing its report, while Professor Stettler spent approximately twenty hours preparing his. As a sort of catchall reason for excluding Stettler's testimony, the District Court relied also on Rule 403. The Court reasoned that Stettler's testimony would confuse the jury because it contradicted other expert testimony offered by Garnac, namely that of Price Waterhouse.
 
 
 12
 While Professor Stettler's use of the Price Waterhouse report alone as the basis of his July 12, 1985 opinion may be the weakest aspect of his proposed expert testimony, it crosses the threshold of admissibility.[4] Moreover, Stettler reaffirmed his opinion in a report dated July 15, 1986, after reviewing Peat, Marwick's work papers. Rule 703 allows experts to express their opinions on "facts or data ... perceived by or made known to [them] at or before the hearing." Certainly, Professor Stettler's later review of the work papers and reaffirmation of his previous opinion is permissible under this broad language. The District Court did not mention this second opinion (attached as an exhibit to Peat, Marwick's motion in limine) in its August 30, 1988 decision to exclude Stettler's testimony.
 
 
 13
 Perhaps the combined weaknesses of Howard Stettler's methodology and qualifications would lead us to discount his opinion if we were jurors. But we are not jurors. The weaknesses in his opinion and expertise go to the weight to be given his testimony, not its admissibility. See, e.g., Fox v. Dannenberg, 906 F.2d 1253, 1256-57 (8th Cir.1990). Peat, Marwick's criticisms of Professor Stettler's testimony are the subject of cross-examination. They should not be used to exclude his testimony. After both parties question Professor Stettler at trial, it is for the jury to determine the value of his opinion.
 
 
 14
 Garnac's final proposed expert is a former partner of Price Waterhouse, Donald Crews, who was in charge of investigating Millison's embezzlement and was the principal author of the Price Waterhouse report. The parties agree he is qualified to provide expert testimony. On April 23, 1987, Peat, Marwick deposed Crews concerning his role in investigating the embezzlement and writing the Price Waterhouse report. His testimony at the deposition was consistent with the conclusions reached in the report: Peat, Marwick failed to comply with GAAS for the fiscal year ending January 31, 1982. In response to Peat, Marwick's motion for summary judgment on the pre-1982 claims, however, Garnac presented an affidavit signed by Crews on June 28, 1988, indicating that in his opinion Peat, Marwick failed to comply with GAAS as early as 1980. In his affidavit, Crews concluded that a reasonably prudent auditor would have discovered Millison's embezzlement if it had received Garnac's February 1980 bank statement unopened from Garnac, as Peat, Marwick's work papers indicate that it did.
 
 
 15
 Relying on our decision in Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8th Cir.1983), the District Court ruled that Crews's affidavit, contradicting his previous sworn testimony, could not defeat Peat, Marwick's motion for summary judgment. In Camfield, we affirmed a district court's grant of summary judgment where a party submitted an affidavit contradicting prior deposition testimony for the express purpose of precluding summary judgment, and thus purported to create a genuine issue of material fact. We noted that the affidavit presented by the plaintiff's president failed to "explain aspects of his deposition testimony, nor [did] the deposition reflect any confusion on Camfield's part that ... require[d] explanation." Id. at 1365.
 
 
 16
 Garnac claims the District Court erred by extending Camfield to a non-party, and by reading Crews's affidavit as contradicting his deposition testimony. We disagree. We see no reason to limit the holding of Camfield to the affidavits of parties. As one of our sister circuits stated in response to the same argument: "The purpose of summary judgment motions ... is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony." Adelman-Tremblay v. Jewel Companies, Inc., 859 F.2d 517, 521 (7th Cir.1988).
 
 
 17
 After reviewing Crews's deposition, we find no confusion on his part or the attorneys' concerning the line of questioning, sufficient to generate a need for further clarification. Garnac's attempt to distinguish Crews's "personal" opinion expressed in his affidavit, and the "institutional" opinion of Price Waterhouse expressed in the report and in his deposition is without merit. Crews's deposition reveals that neither he nor Garnac's attorneys (who declined to cross-examine him at his deposition) perceived this allegedly crucial distinction until Peat, Marwick moved for summary judgment. Moreover, Crews's newly alleged disputed fact concerning whether Peat, Marwick received the February 1980 bank statement unopened was taken into account in the report, see Price Waterhouse Report, Joint Appendix at 361-68, 383, and was certainly known to Crews at the time of his deposition. Thus, the issue of whether the bank statement was received unopened by Peat, Marwick does not involve newly discovered evidence that should preclude summary judgment. See Camfield, 719 F.2d at 1365. Accordingly, we agree with the District Court's exclusion of Crews's affidavit. Because it was error, however, to exclude Professor Howard Stettler's testimony, the summary judgment for Peat, Marwick with respect to the five earlier fiscal years (ending on January 31 of 1977 through 1981) must be reversed.
 
 III.
 
 18
 After the District Court's rulings left Garnac with a prima facie case only for the fiscal year ending January 31, 1982, the Court granted Peat, Marwick's motion for summary judgment on this remaining claim. The Court held that a Missouri statute governing the release of joint tortfeasors precluded further recovery by Garnac because Garnac had settled with the banks for an amount greater than the remaining claim against Peat, Marwick. That statute provides, in part:
 
 
 19
 When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.
 
 
 20
 Mo.Rev.Stat. Sec. 537.060 (1986) (emphasis added).
 
 
 21
 On July 28, 1987, the banks settled their litigation with Garnac for $945,000.[5] Peat, Marwick's potential liability for the 1982 audit was $591,618.61.[6] Thus, Garnac's remaining claim against Peat, Marwick was for an amount less than the bank settlement of $945,000. Applying the language of the statute requiring it to "reduce the claim by the stipulated amount of the agreement," the District Court concluded that Garnac was barred from further recovery.
 
 
 22
 The gist of Garnac's challenge to this ruling of the District Court is that each check Millison embezzled resulted in a separate "claim" or "injury" for purposes of the Missouri settlement statute.[7] Consequently, it argues, the Court erred in equating its six and one-half year claim against the banks with its six and one-half month claim against Peat, Marwick. Obviously the whole context of this issue is changed now, in view of our ruling in Part II of this opinion that Garnac is entitled to a trial on its claim against Peat, Marwick for the entire period of six and one-half years. It can no longer be said (and this was an essential predicate of the District Court's ruling) that the settlement paid by the banks exceeds the maximum possible recovery against Peat, Marwick. The question of the Missouri statute's meaning in the situation left by the ruling of the District Court is now moot. If Garnac recovers against Peat, Marwick on remand, the District Court may then address, in the new situation that will then exist, the effect of the Missouri settlement statute.
 
 IV.
 
 23
 Despite the fact that the District Court eliminated the need for a trial on Garnac's claims, it made several rulings in preparation for a trial. In view of our decision to reverse in part, we address two of these rulings.[8]
 
 
 24
 The District Court ruled that under Missouri law, principles of comparative fault apply to Garnac's accounting-malpractice claim. The ruling allows Peat, Marwick to present evidence of Garnac's own negligence at trial. We review this issue of state law de novo, Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), and we reverse. In Gustafson v. Benda, 661 S.W.2d 11, 15 (Mo.1983), the Missouri Supreme Court stated that "[i]nsofar as possible this and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act...." But the Missouri Supreme Court has not applied comparative fault in all tort cases, see, e.g., Lippard v. Houdaille Industries, Inc., 715 S.W.2d 491 (Mo.1986) (declining to apply comparative fault in a strict products liability case) (superseded by Mo.Rev.Stat. Sec. 537.765 (1987)), and we do not believe it would apply such principles to the negligence claim asserted here. In Murphy v. City of Springfield, 738 S.W.2d 521, 529-30 (Mo.App.1987), the question presented was whether principles of comparative fault should be applied in an action for negligent misrepresentation. The Court of Appeals for the Southern District said no. The only injury alleged was economic, as opposed to physical harm or death, and this fact was dispositive. "[W]e doubt that Missouri will apply comparative fault any broader than the [Uniform Comparative Fault] Act," 738 S.W.2d at 530, the Court said. Section 1(a) of the Act states that it covers "damages for injury or death to person or harm to property." The commissioners' comments following that section state, among other things, that "Harms Covered " are "... confined to physical harm to person or property.... It does not include matters like economic loss resulting from a tort such as negligent misrepresentation." The Missouri Supreme Court in Lippard had stated that the Act was not to be literally followed, and that there was no purpose to give special authority to the commissioners' comments, but the Court of Appeals, nonetheless, felt free to look to the Act and the comments for guidance.
 
 
 25
 Decisions of the Missouri Supreme Court as to state law are binding on us. Decisions of the various intermediate appellate courts are not, but they are persuasive authority, and we must follow them when they are the best evidence of what Missouri law is. We believe that is the case here. Both the text of the Act, which the Supreme Court attached as an appendix to its opinion in Gustafson, and the commissioners' comments indicate that comparative fault does not apply in actions (like the present one) for negligent infliction of economic harm. One might argue that, in cases not covered by the Act, Missouri courts would continue to apply the common law, under which a claimant's fault, large or small, was a complete defense. That was not the course taken, however, in Murphy, and we conclude that Murphy, which the opinion of the District Court did not discuss, is our best guide of what the Missouri Supreme Court would do. Before Salve Regina College, this is the kind of question as to which we might well have deferred to the District Court, on the theory that that Court would know better than we whether the Missouri Supreme Court would be likely to agree with Murphy. But in the new climate of de novo review, we think the opposite conclusion is compelled. We can read the same cases that the District Court can, and on that basis we think the better view is to follow Murphy. Accordingly, on remand, evidence of Garnac's fault will not be admissible for purposes of comparison with the fault of Peat, Marwick.
 
 
 26
 In the same order, the District Court responded to a motion in limine Garnac filed to exclude from evidence its receipt of payment under a two million dollar fidelity bond from Federal Insurance Company, its insurer. The Court concluded that receipt of the proceeds under the bond was admissible to demonstrate whether Garnac maintained adequate internal controls, as an exception to Federal Rule of Evidence 411. Rule 411 provides, in part: "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."
 
 
 27
 We conclude the District Court abused its discretion in ruling that purchase of and recovery on the bond is admissible evidence tending to show that Garnac acted imprudently. While it may be true that the fidelity bond is not technically "insurance against liability," as Peat, Marwick argues, the bond is insurance. Consequently, if the jury learns of the fidelity bond, it might improperly reduce Garnac's damages should Garnac prevail. This is the kind of prejudice Rule 411 was intended to eliminate. We also reject Peat, Marwick's argument that Garnac's purchase of the bond is admissible to prove Garnac did not look to Peat, Marwick to protect it from embezzlement. We see no reason why Garnac was not entitled to protection from embezzlement from a number of sources. Due to the limited record before us on this point, we decline to express an opinion as to whether Peat, Marwick may introduce evidence of Garnac's interest-free use of the insurance proceeds in response to the claim for prejudgment interest. This issue, in any event, will arise only if Garnac prevails at trial, and it would then be decided by the Court, not the jury.
 
 
 28
 The final issue before us on appeal is raised by Peat, Marwick: it claims the District Court erred in granting summary judgment to Garnac on its contract counterclaim. The appeal on this point is wholly without merit and deserves no discussion.
 
 V.
 
 29
 To summarize: the District Court erred in excluding the testimony of Professor Howard Stettler. The summary judgment in favor of Peat, Marwick is reversed, and the cause is remanded for further proceedings consistent with this opinion. The effect of the Missouri settlement statute can be reconsidered if need be. On remand, comparative fault will not apply, and evidence of Garnac's fidelity bond will not be admissible except, possibly, in post-trial proceedings with respect to prejudgment interest. The judgment in favor of Garnac on Peat, Marwick's counterclaim is affirmed.
 
 
 30
 It is so ordered.
 
 
 31
 Supplemental Opinion.
 
 
 32
 July 30, 1991.
 
 
 33
 ARNOLD, Circuit Judge.
 
 
 34
 We have before us a petition for rehearing filed by Peat, Marwick, as well as Garnac's response to it. The petition is limited to one point: whether our panel opinion, filed on May 17, 1991, erred in stating that the defense of contributory negligence (a complete defense at common law) no longer exists in Missouri in cases, like the present one, to which the Uniform Comparative Fault Act does not apply.
 
 
 35
 We think the point is well taken. Our discussion of contributory negligence, and our view that it no longer existed as a defense in cases like the present one, was based on our reading of Murphy v. City of Springfield, 738 S.W.2d 521, 529-30 (Mo. App. 1987). As Peat, Marwick has now pointed out, a subsequent opinion in the same case, 794 S.W.2d 275 (Mo. App. 1990) (Murphy II), creates some doubt about our reading of Murphy I. We are left in a state of uncertainty and believe that the prudent course is to withdraw the remark about the defense of contributory negligence that we made in the original opinion, and leave the issue to the District Court in the first instance, if it should recur during proceedings on remand. Accordingly, our discussion of contributory negligence as a complete defense is withdrawn. We intimate no view as to the proper answer to this question.
 
 
 36
 If the District Court, on remand, holds that the complete defense of contributory negligence still exists in cases like this, a further question will arise: What sort of evidence of negligence is admissible? Peat, Marwick contends, citing cases from other jurisdictions, that evidence of any sort of fault on the part of its client, Garnac, would be admissible. Garnac, on the other hand, also citing non-Missouri cases, contends that the only sort of negligence that would be relevant would be negligence on its part that somehow interfered with or prevented Peat, Marwick's making a proper audit. On this view, evidence that Garnac's negligence helped its employee commit embezzlement would not be admissible. We leave this question also to the District Court in the first instance.
 
 
 37
 We understnad, as Garnac argues in its response to the petition for rehearing, that we could go ahead and decide these quesions of Missouri law for ourselves, given the new climate of de novo review of state-law questions created by Salve Regina College v. Russell, 111 S.Ct. 1219 (1991). We choose not to take this course. Questions of law, like other questions, should normally be decided by the District Court in the first instance. This decision and the reasoning which supports it will be helpful to us in exercising our reviewing function, if the case is appealed again.
 
 
 38
 To the extent indicated in this supplemental opinion, the original panel opinion is modified. In all other respects, the petition for rehearing is denied. We direct that the mandate now issue forthwith.
 
 
 
 [1]
 Peat, Marwick is now known as Peat, Marwick, Main & Company
 
 
 [2]
 The banks have been dismissed from this suit after settling with Garnac. The settlement also dismissed a separate suit Garnac brought against the banks
 We are unaware of Millison's current status in this litigation, but Garnac has recovered from her over $1 million of the approximately $3.4 million she embezzled.
 
 
 [3]
 Howard Stettler and Peter Stettler are not related
 
 
 [4]
 Peat, Marwick's reliance on Faries v. Atlas Truck Body Manufacturing Co., 797 F.2d 619 (8th Cir.1986), is misplaced. In Faries, we held that a district court abused its discretion in admitting into evidence a police officer's expert testimony when the officer based his opinion solely on the statements of an interested eyewitness. In contrast, Professor Stettler based his opinion on facts supplied to him by an independent investigator, Price Waterhouse
 
 
 [5]
 The parties do not dispute that Garnac received a $10,000 settlement from two other banks in 1988. We leave to the District Court to determine what effect, if any, this additional sum has on the application of the Missouri settlement statute
 
 
 [6]
 This figure reflects the amount Millison embezzled after Peat, Marwick began conducting its audit for the fiscal year ending January 31, 1982. The figure does not include Garnac's claim for prejudgment interest
 
 
 [7]
 Garnac also argues that the settlement statute does not apply to its breach-of-contract claim. Apparently, this argument was not raised below; it was not discussed by the District Court in its order. We therefore decline to address it here
 
 
 [8]
 We are asked to review the District Court's decision, in advance of trial, on motions to "strike" certain jury instructions. We choose not to do so. We cannot be sure of the context in which these issues will arise at trial. It is better not to attempt an advance ruling on such abstract issues