# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1601

_____

| | | |
|---|---|---|
| Baptist Health, doing business as Baptist Health Medical Center, | * * * | |
| Plaintiff, | * * | |
| v. | * * | |
| Todd P. Smith, M.D., | * * | |
| Defendant/Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| Robert Casali, M.D., | * * | Eastern District of Arkansas. |
| Third Party Defendant/ Appellant, | * * * | |
| Central Arkansas Vascular Surgery, P.A., | * * * | |
| Third Party Defendant. | * | |

_____

Submitted: October 20, 2006
Filed: February 9, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Dr. Todd Smith filed a third-party complaint against Dr. Robert Casali seeking indemnity against a $154,000 judgment awarded to Baptist Health Medical Center ("Baptist Health"). The district court granted summary judgment in favor of Dr. Smith. Dr. Casali appeals. We affirm in part, reverse in part and remand.

## I. *Background*

Dr. Casali is the President and sole shareholder of Central Arkansas Vascular Surgery ("CAVS"). Baptist Health and CAVS jointly hired Dr. Smith to offer medical services with both institutions. As part of this arrangement, Baptist Health offered Dr. Smith a loan agreement to help start his practice. Under the terms of the loan agreement, if Dr. Smith provided medical services in Arkansas for six years, then Baptist Health would forgive the loan debt.

Dr. Smith, hesitant to enter into such an agreement, expressed his concern to Dr. Casali, who responded with a letter stating:

> You will be an employee of Central Arkansas Vascular Surgery, with a beginning employment date of July 1, 2002. Your responsibility to Central Arkansas Vascular Surgery is the professional practice of vascular surgery. You will not be responsible for repayment of any loan to Baptist Health Center in any form or fashion.

Dr. Smith entered the agreement but, after practicing for two years, left Arkansas for Texas. Baptist Health filed suit against Dr. Smith seeking to recover the roughly $154,000 loaned to Dr. Smith. Dr. Smith, in turn, filed a third-party complaint against Dr. Casali and CAVS, alleging that Dr. Casali's letter constituted an agreement to indemnify Dr. Smith against any obligations owed to Baptist Health.

After filing his answer to Dr. Smith's third-party complaint, Dr. Casali was granted permission to file an amended answer. Five days later, Dr. Casali requested permission to file a second-amended answer that attempted to assert several new

defenses. The district court denied Dr. Casali's request to file a second-amended answer and entered judgment in favor of Baptist Health. The district court entered summary judgment in favor of Dr. Smith after concluding Dr. Casali's letter was an indemnity agreement and ordered Dr. Casali to indemnify Dr. Smith against the Baptist Health judgment. Dr. Casali appeals, arguing the district court erred in concluding that the letter was an indemnity agreement and in denying his motion to amend.

## II. *Discussion*

"We review the district court's legal conclusion that a contract existed de novo." *Diesel Power Equip., Inc. v. ADDCO, Inc.*, 377 F.3d 853, 856 (8th Cir. 2004). Decisions from the state supreme court as to state law are binding on this court. *Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1570 (8th Cir. 1991). "Decisions of the various intermediate appellate courts are not, but they are persuasive authority." *Id.*

The focus of this appeal is a single sentence in a three-sentence letter from Dr. Casali to Dr. Smith. The sentence states, "You will not be responsible for repayment of any loan to Baptist Health Center in any form or fashion." Dr. Casali argues that the district court erred by interpreting this statement as a clear expression of his intent to indemnify Dr. Smith sufficient to constitute an enforceable indemnity agreement under Arkansas law. We agree.

Under Arkansas contract law, for language to constitute an indemnity agreement, the intent to indemnify must be expressed in clear and unequivocal terms and to such an extent that no other meaning can be ascribed. *Chevron U.S.A., Inc. v. Murphy Exploration & Prod. Co.,* 151 S.W.3d 306, 310 (Ark. 2004). While no particular words are required to form such an agreement, Arkansas courts "will not impose [an indemnity duty] unless the purpose to do so is spelled out in unmistakable terms." *Id.* The language of an indemnity agreement can be unambiguous and still not

spell out in clear, unequivocal, unmistakable terms the indemnitor's intention to obligate himself to indemnify. *Arkansas Kraft Corp. v. Boyed Sanders Const. Co.,* 764 S.W.2d 452, 453–454 (Ark. 1989).

The letter fails to spell out a promise by Dr. Casali to pay Dr. Smith's debt in clear, unequivocal, unmistakable terms. Conspicuously absent is any reference to Dr. Casali assuming responsibility for Dr. Smith's obligation. Under the loan agreement with Baptist Health, providing medical services in Little Rock constituted repayment by Dr. Smith. Instead, the letter merely states that Dr. Smith will not have to repay any loan from Baptist Health. The disputed sentence reasonably could be understood as Dr. Casali's prediction about whether Baptist Health would hold Dr. Smith responsible for repayment of the loan, or it could simply be a misstatement by Dr. Casali of the terms of the agreement. In any event, Dr. Smith must show more than the possibility that the letter was an agreement to indemnify; the terms must be unmistakable.

Further, the two other sentences in the letter are consistent with a mere articulation of Dr. Casali's understanding of the contract's terms. "You will be an employee of Central Arkansas Vascular Surgery, with a beginning employment date of July 1, 2002. Your responsibility to Central Arkansas Vascular Surgery is the professional practice of vascular surgery." This declaration does not assume responsibility for a loan's repayment. It could readily be taken as a summary statement of the relationship between Dr. Casali, Dr. Smith, and Baptist Health.

Both parties attempt to introduce extrinsic evidence, claiming the letter is ambiguous. However, we need not consider such evidence because we hold the letter is not an indemnity agreement. *See H & H Brokerage, Inc. v. Vanliner Ins. Co.*, 168 F.3d 1124, 1127 (8th Cir. 1999) (holding extrinsic evidence of the meaning of a contract is admissible only when the contract is ambiguous). The parties are not disputing the meaning of any term or phrase in the purported contract, but instead are disputing whether a contract was formed.

-4-

Based upon the forgoing analysis, we conclude that the letter is not an indemnity agreement, that the district court erred by granting Dr. Smith's motion for summary judgment and that the indemnification claim should be dismissed as a matter of law.

### III. *Motion to Amend*

"[I]n determining whether to permit an amendment under Fed.R.Civ.P. 15(b), the district court has broad discretion and will not be reversed except upon a showing of abuse." *Brown v. Cooper Clinic, P.A.*, 734 F.2d 1298, 1301 (8th Cir. 1984) (internal quotations and citations omitted). "Amendments [to pleadings] should be allowed with liberality." *Chesnut v. St. Louis County, Mo.*, 656 F.2d 343, 349 (8th Cir. 1981). However, there is no absolute right to amend and a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility. *Doe v. Cassel*, 403 F.3d 986 (8th Cir. 2005).

We are unable to say the district court abused its discretion by denying Dr. Casali's motion for leave to file a second amended answer. The record evinces a pattern of delay by Dr. Casali's counsel. After postponing their client's deposition, Dr. Casali's counsel refused to return phone calls from opposing counsel seeking to reschedule the deposition. These delays all seem calculated to accommodate the personal schedule of Dr. Casali's lead attorney, who had an extensive travel schedule and preferred not to work on Fridays. These delays were so grave that the district court awarded Dr. Smith $907 in attorney's fees and costs in order to compensate him for the related inconvenience. Dr. Casali does not contest these facts. We agree that allowing Dr. Casali to raise three additional defenses after the close of discovery and so close to the beginning of litigation would have further prejudiced the defendant. These new defenses would have potentially required additional discovery and depositions. Accordingly, we find that the district court did not abuse its discretion by denying Dr. Casali's motion to amend.

## IV. *Conclusion*

We vacate the district court's grant of summary judgment and direct that the indemnification claim be dismissed as a matter of law. The district court's denial of Dr. Casali's motion to amend his answer is affirmed, and the case is remanded for further proceedings on Dr. Smith's claim for contribution.

_____