Bryan D. ROWSON and Donna
Rowson, Plaintiffs,

v.

KAWASAKI HEAVY INDUSTRIES,
LTD., et al., Defendants.

No. C 91–3054.

United States District Court,
N.D. Iowa,
Central Division.

Oct. 24, 1994.

William G. Nicholson, of White & Johnson, P.C., Cedar Rapids, IA, and David M. Nelsen, of the David M. Nelsen Law Office, Mason City, IA, for Rowsons.

Charles A. Blades, of Blades, Carmichael, Rosser & Benz, Cedar Rapids, IA, for Kawasaki.

| | | |
|------|--------------------------------------------------------------------------|------|
| I. | PROCEDURAL BACKGROUND | 1224 |
| II. | CERTIFICATION OF QUESTIONS TO THE IOWA SUPREME COURT | 1225 |
| III. | STANDARDS FOR SUMMARY JUDGMENT | 1226 |
| IV. | FINDINGS OF FACT | 1227 |
| | A. Undisputed Facts | 1227 |
| | B. Disputed Facts | 1228 |
| V. | LEGAL ANALYSIS | 1228 |
| | A. Whether Rowson Read Warnings | 1228 |
| | B. Bryan Rowson's Failure To Read Warnings | 1231 |
| | 1. The Duty To Provide Adequate Warnings | 1232 |
| | 2. Unread Warnings And Causation Issues | 1232 |
| | C. Bryan Rowson's Failure To Heed An Open And Obvious Hazard | 1240 |
| VI. | CONCLUSION | 1243 |

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BENNETT, District Judge.

This is a products liability lawsuit involving a four-wheeled all terrain vehicle, or ATV. Defendants seek partial summary judgment on plaintiffs' claims of failure to warn on the ground that plaintiff did not read any warnings, whether they were adequate or not. Defendants also seek summary judgment on plaintiff's claim that the ATV was defective because it lacked a rollover protection sys-

tem, or ROPS, on the ground that the lack of ROPS constituted an open and obvious danger for which defendants cannot be held liable.

## I. PROCEDURAL BACKGROUND

Plaintiffs Bryan D. Rowson and Donna Rowson (the Rowsons) filed this lawsuit on May 23, 1991, in Iowa District Court for Cerro Gordo County. Defendants are Kawasaki Heavy Industries, Ltd., Canadian Kawasaki Motors, Ltd, Kawasaki Motors Mfg. Corp., and Kawasaki Motors Corp. (collectively Kawasaki). The Rowsons' petition alleges that Bryan Rowson was injured in an accident on June 6, 1989, while riding a four-wheeled ATV designed, built, and sold by Kawasaki. The Rowsons assert various claims that the ATV in question was defective and unreasonably dangerous in design, manufacture, components, warnings,[1] and instructions, and that it breached express and implied warranties of merchantability and fitness. Donna Rowson also claims loss of consortium.

Kawasaki removed this matter to federal court on July 29, 1991. On January 10, 1994, Kawasaki moved for partial summary judgment pursuant to *Fed.R.Civ.P.* 56(a) on some of the claims in the Rowsons' petition, which the court will hereafter refer to as a complaint. Specifically, Kawasaki argues that it is entitled to summary judgment on all of the Rowsons' claims of failure to warn because

Bryan Rowson admitted in his deposition that he did not read any of the warnings or safety information labels attached to the Kawasaki ATV he was operating at the time of his injury, and did not read any part of the owner's manual that accompanied the vehicle at the time of its original sale. Consequently, Kawasaki argues that there is no genuine issue of material fact regarding the adequacy of the warnings it provided with the ATV. Kawasaki also seeks summary judgment on the Rowsons' claims based on the lack of structural or other protection to the rider of the ATV in the event of a roll-over type of accident because the lack of ROPS is an open and obvious condition for which as a matter of Iowa law no liability can attach to Kawasaki.

Kawasaki filed its brief, statement of undisputed facts, and list of citations in support of the motion for partial summary judgment on January 10, 1994. The Rowsons filed their resistance brief, statement of disputed facts, and list of citations on January 24, 1994. No reply brief or motion to file a reply brief has been filed. However, on October 13, 1994, Rowson filed as a supplement to his resistance to the motion for partial summary judgment portions of the deposition testimony of his expert witness, Dr. Edward Karnes.[2] On October 17, 1994, Rowson also filed an affidavit concerning his recollection of having seen and read at least part of several of the warning labels on the ATV in question.[3] In light of this affidavit, Rowson

---

1. The court notes that on September 21, 1994, well after this action and the present motion for partial summary judgment were filed, the Iowa Supreme Court ruled that

 the correct submission of instructions regarding a failure to warn claim for damages is under a theory of negligence and the claim should not be submitted as a theory of strict liability. In testing the defendant's liability for negligence in failing to warn, the defendant should be held to the standard of care of an expert in its field. *See West v. Broderick & Bascom Rope Co.*, 197 N.W.2d 202, 210 (Iowa 1972); *Castrignano [v. E.R. Squibb & Sons, Inc.]*, 546 A.2d [775], 782 [(R.I.1988)]; *Cf. [Owens–Illinois, Inc. v.] Zenobia*, [325 Md. 420,] 601 A.2d [633,] 639 [(1992)]. The relevant inquiry therefore is whether the reasonable manufacturer knew or should have known of the danger, in the light of the generally recognized and prevailing best scientific

 knowledge, yet failed to provide adequate warning to users or consumers. *See West*, 197 N.W.2d at 209; *Castrignano*, 546 A.2d at 782; *Cf. Zenobia*, 601 A.2d at 641; *see also* W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 99, at 697 (5th ed. 1984).

 *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 289–90 (Iowa 1994). The court finds that Rowson's complaint pleads failure to warn as a negligence cause of action. Complaint, Count I.

2. Rowson states that this deposition, taken July 1, 1994, was not available to attach to his resistance filed January 24, 1994.

3. An argument can be made that this affidavit should be stricken as untimely, as it follows the filing of Rowsons' resistance to the motion for partial summary judgment by several months. However, the affidavit presents what is purportedly newly discovered information pertinent to the issues involved, and *Fed.R.Civ.P.* 56(c) pro-

filed an Amendment To Plaintiffs' Statement Of Disputed Facts And Exhibits on October 20, 1994, stating that Rowson now recalls having read the on-product labels. Hearing was held on Kawasaki's motion for partial summary judgment on October 20, 1994, in Cedar Rapids, Iowa.[4] The Rowsons were represented at the hearing by counsel William G. Nicholson, of White & Johnson, P.C., in Cedar Rapids, Iowa, and David M. Nelsen, of the David M. Nelsen Law Office, in Mason City, Iowa. Kawasaki was represented at the hearing by Charles A. Blades, of Blades, Carmichael, Rosser & Benz, in Cedar Rapids, Iowa. At the hearing, Kawasaki was granted leave to file by facsimile a supplemental memorandum on the issue of whether the court should consider Rowsons' affidavit filed on October 17, 1994, and whether that affidavit generated a genuine issue of fact. Kawasaki filed such a supplemental memorandum on October 21, 1994. Rowson was granted to and including October 24, 1994, to file a reply, and did so on that date. The matter is now fully argued, briefed, and submitted by the parties.

Before turning to the appropriate standards for summary judgment and then addressing the merits of Kawasaki's dual arguments for partial summary judgment in its favor, the court will examine whether the issues raised by Kawasaki, questions which the parties agreed at oral argument on October 20, 1994, are of first impression in Iowa, should be certified to the Iowa Supreme Court.

## II. CERTIFICATION OF QUESTIONS TO THE IOWA SUPREME COURT

Whether a federal district court should certify a question of state law to the state's highest court is "a matter addressed to the discretion of the district court." *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir. 1992) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)).[5] A court may consider the following factors in determining whether to certify a question to the state supreme court: (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *L. Cohen & Co. v. Dun & Bradstreet, Inc.*, 629 F.Supp. 1419, 1423–24 (D.Conn.1986).

Although some of these factors might weigh in favor of certifying the two questions presented here, which appear to be questions of first impression for Iowa courts, the court was presented with no request to certify questions to the Iowa Supreme Court. At hearing on this motion the parties stated that

vides that the "adverse party prior to the day of hearing may serve opposing affidavits." Rowsons' belated affidavit was nonetheless filed prior to the hearing of this matter. The court considers other arguments that the affidavit cannot be considered herein.

4. I was appointed as a district judge for the U.S. District Court for the Northern District of Iowa on August 26, 1994, and this case was transferred to me shortly thereafter.

5. Local Rule of the United States District Court for the Northern District of Iowa 23 provides that:

When there is involved in any proceeding a question of law of a state which may be determinative of the cause then pending in this court and as to which it appears there is no controlling precedent in the decisions of the

appellate courts of the state, a motion may be made to certify the question of law to the highest appellate court of the state. This court, on such motion or on its own motion, may certify such question to the appropriate court, if authorized by state or rule.

The Iowa Code provides that:

The supreme court may answer questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

Iowa Code § 684A.1 (1993).

they did not wish to certify questions because such a course might further delay trial of a matter already on file for over three years. The court believes that the availability of persuasive authority from other jurisdictions which have aided the court in coming to a conclusion on the legal issues presented has been such that this court will not certify the questions presented on its own initiative.

## III. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

▆▆▆ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir. 1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[6] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Rowson, and give Rowson the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, Kawasaki, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). Kawasaki is not required by

---

6. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

*Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Rowson is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). "The necessary proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Rowson fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Kawasaki is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the Kawasaki's motion for partial summary judgment.

## IV. FINDINGS OF FACT
### A. Undisputed Facts

The following facts are undisputed. On June 6, 1989, Bryan Rowson was riding ATVs with two friends, Robert Kuhlemeier and Dennis Love, in Cerro Gordo County, Iowa. The ATVs, owned by Kuhlemeier and Love, were identical 1988 KLF300–B1 Bayous designed, manufactured, and marketed by Kawasaki. Kuhlemeier and Love had considerable experience riding ATVs. Rowson, who was 27 years old at the time of the accident, had never ridden an ATV, although he was familiar with riding snowmobiles. Rowson borrowed Kuhlemeier's ATV, and began riding it, accompanied by Dennis Love, who was driving his own identical ATV.

The ATV Rowson was riding bore six safety labels containing operating information and warnings. All labels were in good condition and legible.[7] An operator's manual for the Kawasaki Bayou model ATV was available in the utility compartment of Love's ATV. In his deposition in May of 1992, Rowson testified that he was aware that there were warning labels on the ATV, but that he did not read them before he began

---

7. The court does not believe that the content of the warning labels is dispositive of this motion, and therefore will not quote them here.

riding the ATV and did not consult the owner's manual in the utility box of Love's ATV. Rowson did not contradict those statements in a subsequent deposition on August 18, 1994. However, by affidavit filed with the court on October 17, 1994, shortly before the hearing on defendant's motion for partial summary judgment, Rowson stated that he had recently been shown photographs of the ATV in question, which he had not seen since his accident, and that among them was a photograph of the on-product label warning of the differential transmission. Rowson now states in this eleventh hour affidavit that he recognized and recalled reading the differential label and that he recalls reading other labels at least partially. The record is undisputed that Rowson did not discuss with anyone techniques for operating ATVs, nor particular safety hazards they might present, although he did ask Kuhlemeier about the braking system and gears on the ATV.

The Bayou model ATV was equipped with a rear-wheel differential that could be locked or unlocked using a switch on the ATV. The locking device for the differential was designed to be used in hill climbing to prevent loss of control.[8] It is not known in what position the differential locking switch was set while Rowson was riding the Bayou model ATV. The Bayou model ATV does not have any sort of structural device or rollover protection system (ROPS) to protect the operator's body in the event of an accident.

Rowson sustained serious injuries when the four-wheeled ATV he was driving tipped or pitched over backwards as he attempted to climb up the side of a creekbed. Dennis Love witnessed the accident.

### B. Disputed Facts

The Rowsons argue that there is a dispute as to the following facts, which they argue are material. They allege that there is a factual dispute as to whether Kawasaki should have recognized the possibility that novice riders would use the Bayou model ATV. They allege that the Bayou model ATV has a high center of gravity and control difficulties that present unreasonable danger to the operator. They allege that there is a factual dispute as to the danger presented by the ATV because of the instability in its design, the lack of ROPS, and the combination of these factors, and a dispute as to whether any of these dangers would have been open and obvious to a novice ATV rider or any reasonably prudent person. They also allege that the warning labels on the Bayou model ATV were not of a size, position, coloring, or design such that the safety information they contained, if adequate, would come to the attention of a novice rider or any reasonably prudent person. Finally, as the result of Rowson's assertion in his affidavit filed October 17, 1994, Rowson asserts that there is a genuine issue of material fact as to whether he did or did not read the warnings provided on the ATV before he rode it on June 6, 1989.

### V. LEGAL ANALYSIS

#### A. Whether Rowson Read Warnings

■ Rowson's belated affidavit filed October 17, 1994, attempts to generate a material issue of fact as to whether or not Rowson read the warnings provided on the Bayou model ATV prior to riding it on June 6, 1989. As required by Rule 56(e), Rowson has gone beyond the pleadings, and by affidavit designated "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rowson's affidavit presents "enough evidence so that a reasonable jury could return a verdict for the nonmovant," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct.

---

8. The Owner's Manual contains the following warning under "Climbing Hills":

 Do not operate this vehicle in the differential mode while climbing hills. If either rear wheel leaves the ground, it will spin freely, and the wheel on the ground will transmit very little power causing the vehicle to lose momentum. Then, when the spinning wheel touches the ground, it may grab abruptly, causing the operator to lose control and have an accident.

According to his May 1992 deposition testimony, Rowson did not read this or any other warning on the ATV or in the operator's manual. Rowson now asserts that he read a warning label on the ATV itself concerning the differential. The court presents the warning from the Owner's Manual here only to explain the purpose of the locking differential.

2505, 2514, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994), that even though read by the user, the warnings on the ATV in question here were inadequate to warn the user of the possible dangers. Rowson's belated affidavit would appear to generate a genuine issue of material fact precluding partial summary judgment in favor of Kawasaki.

However, Kawasaki argues that Rowson's affidavit should not be considered or allowed to create a genuine or substantial factual issue sufficient to defeat Kawasaki's summary judgment motion regarding the Rowsons' failure to warn claims. Kawasaki cites *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983), and *Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563 (8th Cir.1991), for the proposition that an affidavit that is in direct contradiction of prior deposition testimony does not raise an issue of material fact. Kawasaki argues that Rowson cannot claim "non-access" to the labels in question here or that they are "newly discovered evidence" justifying an exception to the rule stated in *Camfield.*

In his belated affidavit, Rowson states that at the time of his May 1992 deposition he was aware of the on-product labels on the ATV, but could not recall specifically what they said. Rowson Affidavit, para. 2. He states further that at the time of his May 1992 deposition he had not seen the ATV or any photographs of it or its labels since the accident. *Id.* at para. 3. Specifically, he states, "No photos were shown to me at the deposition. At the time of the deposition, I had no recollection of the content of on-product labels nor of having read them." *Id.* However, Rowson asserts that his memory of the labels was refreshed when he was "recently" shown photographs of them and he "now recall[s] reading them at least partially." *Id.* at para. 4, 5, 6.[9] He specifically recalls reading the differential label. *Id.* at para. 4. In deciding whether this affidavit may be considered and whether it creates a genuine issue of material fact, this court must consid-

er the application in this case of the rule stated in *Camfield* and any exceptions to it.

In *Camfield,* the Eighth Circuit Court of Appeals had to decide whether the conflict between a last minute affidavit and the affiant's earlier deposition testimony created a genuine issue as to any material fact, thus precluding the entry of summary judgment for defendant under *Fed.R.Civ.P.* 56. *Camfield,* 719 F.2d at 1364. The court noted a split in the circuits on this issue. *Id.* (comparing the conclusions in *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540 (9th Cir.1975), which concluded that the conflict created by a later affidavit was not a genuine issue but a sham, and *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir.1980), which concluded that a genuine issue can be raised by a conflicting affidavit in certain circumstances). The court in *Camfield* found that other courts had considered various factors that might be adequate to fall within an exception to the rule that conflicting affidavits do not create a genuine issue of fact. *Id.* Such factors included whether the inconsistency created by the affidavit existed within the deposition itself, or whether the affidavit explained certain aspects of the prior deposition, citing *Kennett–Murray,* 622 F.2d at 894–95, lack of access to material facts or newly discovered evidence, citing *Office Supply Co. v. Basic/Four Corp.*, 538 F.Supp. 776, 785–86 (E.D.Wis.1982), and lack of inherent inconsistency with the prior deposition, confusion in the deposition, and plausibility of the assertions in the affidavit, citing *Letson v. Liberty Mutual Ins. Co.*, 523 F.Supp. 1221, 1230 (N.D.Ga.1981). *Id.* Finding none of these circumstances present in the case before it, the court ruled that the affidavit did not create a genuine but only a sham issue of fact. *Id.* at 1365.

Subsequent appellate decisions in this circuit have sometimes read *Camfield* as stating the rule that courts will not allow an affidavit in conflict with earlier sworn testimony to create an issue of fact. *See, e.g., Schlup v. Delo,* 11 F.3d 738, 742–43 (8th Cir.1993) (concluding that same rule should apply in the

---

9. The court understands Rowson's affidavit to state that Rowson recalls reading these warnings, at least partially, prior to his accident, although his affidavit does not make the timing of the reading of the warnings entirely clear. *See* Rowson's Affidavit, para. 4.

context of *habeas corpus* litigation); *Adams v. Greenwood*, 10 F.3d 568, 572 (8th Cir.1993) ("an affidavit denying what is established by one's own evidence ... does not preclude summary judgment"). However, other decisions have observed exceptions to the rule. *See, e.g., Garnac Grain Co., Inc. v. Blackley*, 932 F.2d 1563, 1568 (8th Cir.1991) (in *Camfield*, "[w]e noted that the affidavit presented by the plaintiff's president failed to 'explain aspects of his deposition testimony, nor [did] the deposition reflect any confusion on Camfield's part that ... require[d] explanation,'" and extending the holding with these exceptions to an affidavit submitted by a non-party); *Kim v. Ingersoll Rand Co.*, 921 F.2d 197, 199 (8th Cir.1990) (in *Camfield*, "we held in the context of summary judgment that unless a party explains the conflict in his own testimony, discrepancies in testimony do not create credibility issues for a jury when the district court perceives a readily apparent sham," and finding adequate explanation in the plaintiff's trial testimony of the discrepancy with prior testimony).

▉ The court concludes that the rule in *Camfield* is most fairly stated to be that the Eighth Circuit Court of Appeals held [in *Camfield*] that an affidavit inherently contradicting the prior deposition testimony of the affiant and containing no explanation or clarification for the disparity fails to create a genuine issue of fact. *Landmark Bank of St. Charles County v. Saettele*, 784 F.Supp. 1434, 1439 (E.D.Mo. 1992). Decisions of the Seventh Circuit Court of Appeals, which has a rule similar to the one stated in *Camfield*, also stress the existence and plausibility of the affiant's explanation of the differences between his prior testimony and that found in the affidavit. *See, e.g., Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1210 (7th Cir.1993) ("'A party may not create a *genuine* issue of fact by contradicting his own earlier statements, at least without a plausible explanation for the sudden change of heart,'" quoting *Richardson v. Bonds*, 860 F.2d 1427, 1433 (7th Cir.1988)); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir.1989) (affidavit in civil case must explain apparent inconsistency with deposition testimony in

order to create an issue of fact on summary judgment); *Babrocky v. Jewel Food Co. and Retail Meatcutters Union, Local 320*, 773 F.2d 857, 861 (7th Cir.1985) (affidavits did not create factual issue precluding grant of summary judgment where they contradicted earlier deposition testimony without explaining the contradiction or attempting to resolve the disparity). The rule in *Camfield* does not preclude the court from considering the affiant's contradictory affidavit, even where no exception to the rule is found. *Dunavant v. Moore*, 907 F.2d 77, 79 n. 4 (8th Cir.1990) (so holding because even though the court in *Camfield* found no exception to the rule, the court considered the affidavit, and concluded only that it did not create a genuine issue of material fact). The court will therefore scrutinize Rowson's belated affidavit to see if it presents a plausible explanation for its discrepancies with prior testimony or other factors justifying an exception to the rule stated in *Camfield* and whether the affidavit generates a material issue of fact precluding summary judgment.

Rowson's affidavit identifies as the reason for the change in his testimony his refreshed memory of having read at least some of the warning labels at least partially. Furthermore, he asserts that his memory was refreshed only by the recent review of photographs of the labels and the ATV in question, neither of which he states that he had seen since his accident. He specifically states that he was not shown these photographs during his May 1992 deposition. Such an explanation of his change in testimony is at least plausible, and the court should not now pass on what credibility a jury may give it or the changed testimony. Although Kawasaki asserts that Rowson's new testimony is inherently inconsistent with his prior testimony, and that there was no confusion about that testimony at the time of the deposition, the court is not persuaded that these factors are relevant to circumstances in which the reason presented for the change in testimony is refreshed recollection. If an affiant has only recently recalled specific facts, then the affiant's new statements will often be inconsistent with prior statements however unequivocally made based on a different recollection of facts.

The court concludes that Rowson's affidavit falls within the exception stated in *Camfield,* and that it does create a genuine issue of material fact as to whether or not Rowson read the warnings on the ATV. In light of this genuine issue on the critical material facts on which Kawasaki has based its motion for partial summary judgment, the court concludes that the motion for summary judgment must be denied.

At the October 20, 1994, hearing, Kawasaki argued that if the court entertains Rowson's belated affidavit, then that affidavit with the testimony of Rowson's expert establish that the "differential label" was read, and its content was adequate, such that Kawasaki is entitled to summary judgment on any warning claim as to that warning label. Further, Kawasaki argued, if Rowson did not read any labels, because Rowson's expert testified that the "differential label" was adequate in presentation and location, his expert's testimony proves that there is no genuine issue of material fact that any attempt to warn Rowson would have been futile. However, the court does not read Rowson's expert's testimony to be an unequivocal statement that the "differential label" was adequate in presentation, location, or content. Rather, the expert's testimony is that "if the reader is interested in knowing something about the differential, that [differential warning label], I think, is conspicuous for that purpose, certainly." Plaintiffs' Supplement To Resistance To Motion For Summary Judgment, Deposition of Dr. Edward Karnes, p. 64, lines 20–23. The expert's testimony does not eliminate a genuine issue of material fact as to whether *any user,* not simply one "interested in knowing something about the differential," would be adequately warned about use of the differential, or that the warning would have come to any user's attention because of its presentation and location. The court concludes that Kawasaki is not entitled to summary judgment on any warnings claim related to the "differential label" or on any other label owing to the existence of genuine issues of material fact generated by Rowson's affidavit.

Even if the court is not entitled to consider Rowson's belated affidavit, the court concludes that Kawasaki would not be entitled to judgment as a matter of law even had Rowson not read the warnings at issue. The court will therefore turn, in the alternative, to examination of the warnings claims on the undisputed facts as they stood until very shortly before hearing on this motion, which were that Rowson had not read the warnings in question.

### B. Bryan Rowson's Failure To Read Warnings

Kawasaki argues that an issue as to the adequacy of a warning necessarily presupposes that the operator has read the warning, citing *Johnson v. Niagara Machine & Tool Works,* 666 F.2d 1223, 1225 (8th Cir.1981). Furthermore, Kawasaki argues, where a warning is given, the seller may reasonably assume that it will be read and heeded, citing *E.R. Squibb & Sons, Inc. v. Cox,* 477 So.2d 963 (Ala.1985), and Restatement (Second) or Torts § 402A, Comment j (1965). Kawasaki argues that Rowson's deposition testimony that he failed to read the warnings available on the Bayou model ATV entitles Kawasaki to judgment as a matter of law on any claims based on the alleged inadequacy of any warning.

Prior to Bryan Rowson's recollection of having read warnings, the Rowsons argued that, on the contrary, whether the warnings given were adequate, and whether adequate efforts were made to convey those warnings to the user, are questions of fact for the jury to decide, citing *Stapleton v. Kawasaki Heavy Indus., Ltd.,* 608 F.2d 571, 573 n. 3 (5th Cir.1979). Specifically, the Rowsons argue that a question of fact is presented as to whether or not the warnings Kawasaki supplied on the Bayou model ATV were sufficient to come to the attention of a novice rider or any reasonably prudent person and convey to him or her the dangers they argue that this model ATV presented.

Thus, Kawasaki appears to argue that whether or not the *content* of its warnings was adequate is irrelevant because Rowson did not read those warnings. Kawasaki argues that it is entitled to summary judgment on all of the Rowsons' failure to warn claims because Rowson did not read the warnings, whatever their content. The Rowsons argue

that the adequacy of the content of the warnings is only one issue, but that the real issue here is whether Kawasaki's *presentation* of the warnings was adequate to bring their content, adequate or not, to the attention of users of the ATV.

In a diversity action, the federal court is not free to fashion rules of law from whole cloth. *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1310 (8th Cir.1993). A federal court is bound to apply the law of the state as it is able to discern it from the rulings of the state's courts. *Id.* Therefore, the federal court first examines state law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Austin v. Super Valu Stores*, 31 F.3d 615, 618 (8th Cir.1994) (citing *Erie*); *Gilliam v. Roche Biomedical Labs., Inc.*, 989 F.2d 278, 280 n. 3 (8th Cir. 1993). However, when an issue is one of first impression in the state's courts, the federal court turns to the decisions of other jurisdictions. *Gilliam*, 989 F.2d at 280 n. 3.

Whether a products liability plaintiff's failure to read a warning entitles the defendant to summary judgment on all failure to warn claims is a thorny issue not previously presented to Iowa courts. The court will therefore be guided, where necessary, by the decisions of other jurisdictions. *Id.*

### 1. The Duty To Provide Adequate Warnings

Iowa courts have followed Restatement (Second) of Torts § 388, which states, in pertinent part, that a supplier of a chattel is subject to liability to those whom the supplier would expect to use the chattel if the supplier

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 188 (Iowa 1982); *West v. Broderick & Bascom Rope Co.*, 197 N.W.2d 202, 209 (Iowa 1972) (stating further that § 394 makes § 388 applicable to manufacturers). *See also Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 864 (Iowa 1994) ("We have recognized that the duty of care placed on a supplier of a product may include an obli-

gation to warn of danger caused by use of the product"; citing *Henkel* and § 388); *Iowa Elec. Light & Power v. Gen. Elec. Co.*, 352 N.W.2d 231, 237 (Iowa 1984) (liability of supplier and manufacturer premised on its inadequate warning of the dangerous condition of the product). Iowa courts have also applied Restatement (Second) of Torts § 402A (1965), which establishes the strict liability of a manufacturer of a product that, although faultlessly made, may nevertheless be deemed defective "if it is unreasonably dangerous to place the product in the hand of a user without a *suitable* warning." *LaCoste v. Ford Motor Co.*, 322 N.W.2d 898, 900 (Iowa App.1982) (emphasis added; citing *Cooley v. Quick Supply Co.*, 221 N.W.2d 763, 768–69 (Iowa 1974)). The duty to warn in this situation depends upon the superior knowledge of the manufacturer or supplier and is triggered "when one may reasonably foresee a danger of injury or damage to one less knowledgeable unless an *adequate* warning is given." *Beeman v. Manville Corp. Asbestos Fund*, 496 N.W.2d 247, 252 (Iowa 1993) (emphasis added; citing *Lakatosh v. Diamond Alkali Co.*, 208 N.W.2d 910, 913 (Iowa 1973)). *See also Duke v. Clark*, 267 N.W.2d 63, 65 (Iowa 1978) (holding that a jury question was presented on the adequacy of the warning given the plaintiff).

■ Thus, under Iowa law, the duty to warn requires *adequate* warning, and the adequacy of the warning depends both upon its content and upon whether the person under the duty took reasonable care to inform the user of the possible danger of the product. An adequate warning that no one sees does not inform the user of anything. This far Iowa law can take us, but much of the remaining analysis of this issue requires examination of the law of other jurisdictions. The decisions of courts of other jurisdictions demonstrate that reasonable care to inform the user logically means both that the content be appropriate and that it be presented in a way likely to reach the user.

### 2. Unread Warnings And Causation Issues

A number of state courts have confronted the issue of whether a products liability

plaintiff's failure to read a warning precluded liability of the supplier of the product for failure to warn. The cases have usually been analyzed on the basis of whether or not the plaintiff's failure to read the warnings given broke the causation chain required to attach liability to the defendant. The decisions of these courts require careful analysis.

■ Texas courts twice confronted the issue in the 1960s and 1970s. In *Charles Pfizer & Co. v. Branch*, 365 S.W.2d 832 (Tex.Civ.App.1963), the Texas Court of Civil Appeals considered whether plaintiff had failed to show proximate cause in an inadequate warnings case involving calf medicine because he had failed to read the warning. *Branch*, 365 S.W.2d at 834. The court held that the warning was inadequate because, even had it been read, the warning would not

have advised plaintiff of the necessity of obtaining an antidote if a calf had a reaction to the medicine. *Id.* at 834–35. Therefore, the court held that the defendant could be held liable for the inadequacy of the warning. *Id.*[10]

In *Technical Chem. Co. v. Jacobs*, 480 S.W.2d 602; 15 Tex.Sup.J. 307 (1972), the Texas Supreme Court considered the case of a man injured when a freon can exploded after he failed to read warnings and connected a hose to the wrong valve on the can. *Technical Chem.*, 480 S.W.2d at 604. The court again considered proximate cause arguments raised by the defendant, who argued that the jury was entitled to conclude from the evidence that a proper warning would have made no difference. *Id.*[11] The court

**10.** The Texas Court of Civil Appeals cited *Spruill v. Boyle–Midway, Incorporated*, 308 F.2d 79 (4th Cir.1962), for the proposition that a manufacturer of an inherently dangerous product could not avoid liability for injury caused by use of its product where warning of the danger was insufficient, although the user admitted he had not read the label containing the warning. The court also cited *Wright v. Carter Products, Inc.*, 244 F.2d 53 (2d Cir.1957), for the proposition that liability for failure to discharge a duty to warn persons of danger from the use of a product by inserting appropriate words of caution was rightly borne as a cost of producing and selling a commodity for use by the public, whose knowledge of the potential danger may be greatly inferior to that of the manufacturer. Because the court apparently considered inadequate warnings sufficient basis for liability, whether or not the warnings were actually communicated to the plaintiff, the court held as follows:

> We think the court properly concluded that the statement on the label that if an allergic reaction set in use of the medicine should be discontinued was an inadequate warning. The facts of this case show that when a severe reaction was had that mere discontinuance of use of the Combiotic was of no avail. Appellant did not advise doing the only thing that could have helped. It gave no antidote. The evidence justified the conclusion that when there was a severe reaction unless a known antidote was promptly administered the cattle would probably die; that these facts were known to appellant; that necessity for the antidote was not known to Branch, nor would it have been known to the ordinary purchaser and user of the medicine. The cause of action arose in part in Stonewall County when the medicine was sold by the dealer in Stonewall County without adequate warning.
> The judgment is affirmed.

*Branch*, 365 S.W.2d at 834–35.

**11.** The court wrote:

> The product itself was neither defective nor unreasonably dangerous. The danger was the failure to warn consumers of an improper use of the product. It is defendant's contention that a proper warning would not have avoided Jacobs' wrong installation procedure because he would not have read a label with full and adequate warnings. This precise question has not been previously presented to this court and little has been written on the subject. Dean W. Page Keeton has carefully examined and analyzed the problem of warning and causation, and we find his several articles helpful. Keeton, Products Liability—Inadequacy of Information, 48 TEXAS L.REV. 398 (1970); Keeton, Private Law—Torts, Annual Survey of Texas Law, 24 S.W.L.J. 3, 12 (1970); Keeton, Products Liability—Problems Pertaining to Proof of Negligence, 19 S.W.L.J. 26, 33–34 (1965). Dean Keeton divides defective products into three categories: (1) those which are unreasonably dangerous due to safety legislation prohibiting the sale of the product under the circumstances; (2) those which are unreasonably dangerous since the ordinary man, knowing the risks and dangers involved in the use of the product, would not have marketed the product; (3) those which are unreasonably dangerous since the same ordinary man would not have marketed the product without supplying warnings as to the risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers.... When the defect is due to inadequate labeling, however, there is a difference; the defect and the product are separable. In the words of Dean Keeton, when a product is defective due to inadequate labeling, "the as-

considered the appropriateness of the presumption Kawasaki has argued for here that an adequate warning would have been read. *Id.*[12] The court ultimately concluded that the effect that an adequate warning would have had on a plaintiff who did not read the warning actually given was a matter for the jury to decide. *Id.*[13] Thus, the older Texas decisions moved from a rule of law that a supplier of a product is liable for an inadequate warning, whether read or not, to a rule that the jury should decide whether an adequate warning would have been read by a plaintiff who did not read the warning actually given.

The Texas Supreme Court has since revisited these issues. In *Magro v. Ragsdale Brothers, Inc.*, 721 S.W.2d 832, 834 (Tex. 1986), the Texas court did adopt the presumption suggested in *Technical Chemical,* and considered its application in two cases in 1993. In *Dresser Indus., Inc. v. Lee,* 880 S.W.2d 750 (Tex.1993), the court concluded that the plaintiff's limited education and difficulty reading, plus the circumstances in which he was working, rebutted the presumption that the plaintiff would have heeded any warning. *Dresser,* 880 S.W.2d at 753.[14] In an even more recent decision, the Texas court held that a manufacturer was

pect of the defendant's conduct that made the sale of the product unreasonably dangerous [i.e., the label] must be found to have contributed to the plaintiff's injury." 48 TEXAS L.REV. at 413. This means that it is incumbent upon the plaintiff to secure a jury finding that the faulty labeling was a cause of the injury. It is this finding that Jacobs failed to secure.
*Technical Chem.,* 480 S.W.2d at 604–05.

**12.** The court wrote:
It has been suggested that the law should supply the presumption that an adequate warning would have been read. "Where warning is given, the seller may reasonably assume that it will be read and heeded." RESTATEMENT (SECOND) OF TORTS § 402A, Comment j (1965). See Note, 50 TEXAS L.REV. 577 (1972). Such a presumption works in favor of the manufacturer when an adequate warning is present. Where there is no warning, as in this case, however, the presumption that the user would have read an adequate warning works in favor of the plaintiff user. In other words, the presumption is that Jacobs would have read an adequate warning. The presumption, may, however, be rebutted if the manufacturer comes forward with contrary evidence that the presumed fact did not exist. *Sudduth v. Commonwealth County Mutual Ins. Co.,* 454 S.W.2d 196 (Tex.1970); *Southland Life Ins. Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854 (1942); 1 McCormick & Ray, TEXAS LAW OF EVIDENCE § 53 (1956). Depending upon the individual facts, this may be accomplished by the manufacturer's producing evidence that the user was blind, illiterate, intoxicated at the time of the use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use was or would have been made regardless of the warning.
*Id.* 480 S.W.2d at 605.

**13.** The court held:
The jury in this case refused to find that Technical Chemical's failure to warn was a produc-

ing cause of Jacobs' injuries, and we are unable to say that Jacobs established as a matter of law that it was a producing cause. As pointed out by Technical Chemical, this record shows that Jacobs first testified to a state of facts which had him in the process of beginning to read the label at the time of the explosion. Later, at trial, he was forced to abandon this entire theory when confronted by eyewitness testimony that proved an entirely different state of facts. There was left in the record Jacobs' own statements that he did not read the label before the explosion. Jacobs at one time testified he had previously installed freon in his car about four dozen times, but later said he had done so a few times. From this unsatisfactory state of Jacobs' testimony and all the circumstances, the jury could have concluded that the warning, whatever it might have contained and however it might have been displayed, would have been disregarded by Jacobs.
*Id.* at 606.

**14.** The court held:
In *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602, 606 (Tex.1972), we considered but did not adopt a rebuttable presumption that an adequate warning will be read and that the failure to give an adequate warning is necessarily a cause of injury. Instead, we concluded that even if there were such a presumption, there was sufficient evidence to show that plaintiff would have disregarded any warning given. In *Magro v. Ragsdale Brothers, Inc.,* 721 S.W.2d at 834, we did adopt the presumption suggested in *Technical Chemical,* holding that "it may be rebutted with evidence that the user [of the product] was blind, illiterate, intoxicated at the time of the product's use, irresponsible, lax in judgment, or by some other circumstances tending to show that the improper use would have occurred regardless of the proposed warnings or instructions." Employment of this presumption excuses plaintiff from offering self-serving evidence— that yes, he would have followed instructions if only they had been given—simply to meet his

under no duty to make warnings inescapably obvious, and that where there was evidence that the plaintiffs had not read the warnings given, there was no reason to assume that they would have read a more prominently displayed warning. *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 361 (Tex.1993).[15] Thus, under Texas law, although failure to read warnings is not a bar to a cause of action for failure to give adequate warnings, the plaintiff must demonstrate that an adequate warning would have been read.

In *E.R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963 (Ala.1985), the Alabama Supreme Court considered questions of causation in an unread warnings case, this time one involving insulin and a risk of brain damage. The defendant, like Kawasaki here, again argued that no warning it could have given would have made any difference, because plaintiff did not read the warning actually given. *Squibb*, 477 So.2d at 970. The court agreed with defendants, and distinguished the situations in which unread warnings would preclude liability of the defendant, and those in which they might well prove liability:

> We contrast the instant facts with a situation where a plaintiff cannot read and alleges that the written warning is inadequate for failure to include symbols, *see e.g., Hubbard–Hall Chemical Co. v. Silverman*, 340 F.2d 402 (1st Cir.1965) (affirming

judgment against manufacturer of crop dusting chemicals in negligent-failure-to-warn action for death of two non-English reading Puerto Ricans where label on chemical container did not display skull and cross-bones symbol in addition to written warning); or a situation where plaintiff alleges that the warning is inadequate with respect to prominence, *see e.g., Spruill v. Boyle–Midway, Inc.*, 308 F.2d 79, 87 (4th Cir.1962) (affirming judgment against manufacturer of furniture polish in negligent-failure-to-adequately-warn action for death of a 14–month–old child where mother did not read warning on furniture polish bottle, but warning was "not calculated to attract the user's attention, due to its position, size, and ... coloring").

In either of the above situations, the very nature of the alleged breach is such that it causes a potential plaintiff to fail to read the warning which causes his injury. The warning might even be perfectly adequate with respect to wording, so that if a potential plaintiff read it he would appreciate the product's particular danger, alter his conduct accordingly, and not be injured. But, in the situations we describe above, the warnings are potentially inadequate because they are presented in a manner that prevents a consumer from reading them and being warned.

---

burden of proof. Once defendant has offered evidence of circumstances tending to show that no warning would have been heeded, an issue arises which can be resolved only by the finder of fact.

In the present case, evidence was adduced at trial that Lee had an eighth grade education, had difficulty reading, and thus did not pay attention to warning labels. Dresser offered evidence that because of the heat in the workplace Lee seldom used a mask or respirator to protect against inhaling the silica dust, even though it bothered him so much that he had to blow it out of his nose and spit it out of his mouth. Lee's working conditions—a hot, dusty, improperly ventilated foundry—are, in the words of *Magro*, "other circumstances tending to show that the improper use would have occurred regardless of the proposed warnings or instructions." *Id.* This evidence was sufficient to rebut any presumption that Lee would have heeded a warning by Dresser and that the absence of such a warning was at least a cause, if not the only cause, of Lee's injury. Although Lee disputed whether he would have heeded a warning label on bags of Dresser

products, Dresser was entitled to have that conflict in the evidence resolved by the jury. Dresser's evidence, though certainly not conclusive, raised a factual issue for the jury to resolve. If the jury believed Dresser's evidence, it could have concluded that Tyler Pipe's negligence was not only a cause, but the sole cause of Lee's injuries. It follows, therefore, that the trial court's exclusion of Dresser's evidence was reversible error.

*Id.* (footnotes omitted).

15. The court held as follows:

There is no evidence that anyone at Sascon or Cantu would have read a warning free from the inadequacies determined by the court of appeals. Indeed, given that they did not read the warnings GM provided, there is no reason why they would have read the warnings which the court of appeals held should have been provided. While GM could have made the warning inescapably obvious, more than it was, it had no duty to do so. Thus, there is no evidence that the inadequacies in GM's warning caused the accident. *Id.*

In the present situation, we have a different kind of inadequacy. Here, nothing in the nature of Squibb's inadequate warning prevented plaintiff from reading it. Plaintiff could have read this allegedly inadequate, unspecific warning as easily as he could have read an adequate, specific warning. And, no amount of specificity would have protected this plaintiff, because he would not have read a warning. Thus, the presumed inadequacy of Squibb's warning did not proximately cause plaintiff's injury.

*Therefore, we hold today that a plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it.*

*Id.* 477 So.2d at 970–71. Rowsons' arguments place his case squarely within the exception carved out by the Alabama court in *Squibb.*

The Alabama Supreme Court has recently followed its ruling in *Squibb.* In *Carruth v. Pittway Corp.,* 643 So.2d 1340 (Ala.1994), the court, concluded that the law does not require that necessary warnings be conveyed in the best possible way, but, citing *Squibb,* held that it "does require that they not be conveyed in a manner that effectively 'prevents a consumer from reading them and being warned.'" *Carruth,* 643 So.2d at 1345. The court concluded that, although the plaintiff had not read the warnings given, "from the pamphlet's format and print size, and the seemingly sufficient diagram on the box, a fair-minded person could reasonably infer that a user would be induced to only scan the pamphlet and thereby not get from the pamphlet the information about [the specific danger alleged to have caused the accident]." *Id.* at 1346. The court held that a jury question was presented on the adequacy of warnings, even though unread, and further concluded that the plaintiff had shown sufficient causation as the result of the allegedly inadequate warnings to go forward. *Id.*[16]

The Louisiana Supreme Court also considered whether any warning would have been futile in an unread warnings case, concluding that the defendant had shown that any warning, however given, would have been futile, and therefore plaintiff could not show causation. *Lewis Bloxom, et ux v. Lonnie Bloxom, et al.,* 512 So.2d 839 (La.1987).[17]

**16.** The Alabama court recognized in another decision that in a case involving a plaintiff who read some, but not all, of the warnings given, an inference was created that the plaintiff would have followed additional or other adequate warnings. *Sears, Roebuck & Co. v. Harris,* 630 So.2d 1018, 1030 (Ala.1993). This inference may be applicable to the situation Rowson now argues in his October 17, 1994, affidavit obtains here, that he read some of the labels at least in part.

**17.** The Louisiana Court held as follows:

An essential element of the plaintiff's cause of action for failure to adequately warn of a product's danger is that there be some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered. *Halphen* [*v. Johns–Manville Sales Corp.*], [484 So.2d 110 (La.1986)] *supra; Hebert v. Brazzel,* 403 So.2d 1242, 1244 (La. 1981); *Weber* [*v. Fidelity & Casualty Ins. Co. of N.Y.*], [259 La. 599, 250 So.2d 754 (1971)] *supra; see, generally,* Prosser & Keeton on Torts § 41; Twerski, *Seizing the Middle Ground,* 57 N.Y.U.L.Rev. 521, 562 (1982). Once a plaintiff proves that the lack of an adequate warning or instruction rendered the product unreasonably dangerous, his cause in fact burden is assisted by a presumption:

when a manufacturer fails to give adequate warnings or instructions, a presumption arises that the user would have read and heeded such admonitions. *Benoit v. Ryan Chevrolet,* 428 So.2d 489, 493 (La.App. 2d Cir.1982); *Technical Chemical Co. v. Jacobs,* 480 S.W.2d 602, 606 (Tex.1972); *Wolfe v. Ford Motor Co.,* 6 Mass.App.Ct. 346, 376 N.E.2d 143 (Mass.App. Ct.1978); *Nissen Trampoline Co. v. Terre Haute First National Bank,* 332 N.E.2d 820, 826–27 (Ind.App.Ct.1975); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1281–82 (5th Cir.1974); *Jackson v. Johns–Manville Sales Corp.,* 727 F.2d 506, 523 (5th Cir.1984). The presumption, may, however, be rebutted if the manufacturer produces contrary evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances. *Cf. Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832 (Tex.1986); *See* Note, Products Liability, 50 Tex.L.Rev. 577 (1972); McCormick on Evidence, 3d ed. § 343 (1984).

Assuming the role of the trier of facts once again, we conclude that because the plaintiffs proved that the manufacturer failed to give adequate warnings as to the Firebird's incendiary propensities, a presumption arose that the user, Lonnie Bloxom, would read and heed

Shortly thereafter, the Louisiana Court of Appeal followed the *Bloxom* rule that where any warning would have been futile, plaintiff cannot show causation. *Safeco Ins. Co. v. Baker*, 515 So.2d 655 (La.App.1987). The Louisiana Court of Appeal again applied the process of presumption and rebuttal found in *Bloxom* to conclude that plaintiff had failed to show causation because defendants demonstrated that plaintiff would not have heeded any warning. *Id.* at 657–58.

In *East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113 (D.C.1990), the District of Columbia court again applied a presumption that an adequate warning would have been read and heeded even though the plaintiff in that case, a garage employee injured by an exploding car battery, had not himself read the warnings on the product. The court first concluded that the adequacy of a warning was a jury question, *Pineda*, 578 A.2d at 1122. The court then distinguished between kinds of inadequate warnings claims:

> In the failure to warn context, it is first necessary to distinguish between (1) failure to take adequate steps to ensure the warning was communicated to the ultimate user—issues involving the prominence and location of the label—and (2) failure to provide a warning that, if communicated to the user, would have been adequate to

warn of risk—which involves the content of the warning. When the failure to warn is based upon the steps taken to communicate the warning, the fact that the plaintiff never read the warning is itself evidence that the label was inadequate, and should not bar recovery. *See Rhodes v. Interstate Battery System of Am.*, 722 F.2d 1517, 1519 (11th Cir.1984). But when the cause of action is predicated on the content of the warning, as in this case, the plaintiff's own failure to read it will be contributory negligence in some jurisdictions. *Id.*

*Pineda*, 578 A.2d at 1124. The court did not consider the plaintiff's failure to read the warning fatal, however, because in the case of *Payne v. Soft–Sheen Products*, 486 A.2d 712 (D.C.1985), the court had adopted a "rebuttable presumption that the user would have read an adequate warning, and in the absence of evidence rebutting the presumption, a jury may find that the defendant's product was the producing cause of the plaintiff's injury." *Id.* (citing *Payne*, 486 A.2d at 725). Under the *Payne* analysis, causation is inferred from the inadequacy of the warning itself. *Id.* at 1125. The presumption is rebutted if defendant presents evidence that the warning would not have been heeded in any event. *Id.*[18] The court concluded in this

*Bloxom*, 512 So.2d at 850–51.

18. The court stated that

> such a warning had it been given. However, when we examine the evidence, we find that the manufacturer has fulfilled not only its burden of producing contrary evidence but also its burden of persuading us that even an adequate warning in the owner's manual would have been futile in this case. Lonnie Bloxom testified on both direct and cross examination that he had not read any part of his owner's manual prior to the fire. He stated that it was not his practice to refer to an automobile operator's manual unless there was something wrong with the car. Accordingly, even if an adequate warning of the particular danger in this case had been given by a proper provision in the manual, such a warning would have been futile because Lonnie Bloxom did not read the manual before parking his car over combustible materials.

> For the reasons assigned, we conclude that while the plaintiffs proved most of the elements of their case, they failed to prove that the lack of an adequate warning was a cause in fact of the damages they sustained, and the court of appeal therefore reached the correct result. Accordingly, the court of appeal judgment is affirmed.

> evidence that a warning, even if communicated, would not have affected the conduct of the user rebuts the presumption of causation and, indeed, may be sufficient to break the chain of proximate causation entirely. Accordingly, if the evidence shows that Pineda would not have heeded warnings communicated on an adequate warning label, he cannot rely on the *Payne* presumption, and may not recover absent proof that the inadequacy of the warning label was at least a substantial factor contributing to his injury. In arguing that "the alleged inadequacy of the warning had no effect on the way [Pineda] acted," appellants rely on his testimony that he had learned how to handle batteries from his uncle and by observing his coworkers, and had successfully handled them in the same way for many years. Considering also his testimony that he knew batteries produced explosive gas that could be ignited by sparks and that goggles should be worn when working around them, appellants argue that he would have disregarded adequate instructions

case that defendants could not rebut the presumption. *Id.* The court believed that had the warning been adequate, someone in the plaintiff's workplace would have heeded the warning and properly instructed plaintiff. *Id.*

The Arkansas Supreme Court has applied the presumption used by the Louisiana courts in *Bloxom* and *Safeco.* In *Bushong v. Garman Co.,* 311 Ark. 228, 843 S.W.2d 807 (1992), the Arkansas court held

> We think the better rule is that failure to read the label does not automatically preclude a claim for inadequate warning. We find the rule applied in *Safeco Ins. Co. v. Baker,* 515 So.2d 655 (La.Ct.App.1987), particularly persuasive and we adopt the reasoning therein. *Safeco* holds the plaintiff originally has the burden of proving the warnings or instructions provided were inadequate. Once a plaintiff proves the lack of an adequate warning or instruction, a presumption arises that the user would have read and heeded adequate warnings or instructions. This presumption may be rebutted by evidence "which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." *Safeco Ins. Co.,* 515 So.2d 655, 657 (La.Ct.App.1987); *See also Johnson v. Niagara,* 666 F.2d 1223 (8th Cir.1981). In this case, appellant himself admitted that he had never read a label on a cleaning product during the three years he worked at Stewart Electric. Given this, we cannot say the trial court erred in finding appellant's failure to read the label precluded his claim as any warning or

instruction would have been futile since appellant would not have read it.

*Bushong,* 311 Ark. at 234, 843 S.W.2d at 811. The dissent attacked this conclusion, not because it objected to the analysis, but because it believed that it was for the jury to decide whether the presumption had or had not been rebutted. *Id.* at 242, 843 S.W.2d at 817 (Brown, J., dissenting).

These cases lead the court to the following conclusions: (1) failure to read a warning does not as a matter of law preclude a claim of inadequate warnings if the plaintiff's claim is that the warning given was inadequate in presentation and location unless there are no material questions of fact that any warning would have been futile; (2) where plaintiff alleges that a warning is inadequate because it was not effectively communicated—a presentation and location of warnings case—the plaintiff's failure to read the warning may be evidence of the inadequacy of the warning; (3) where plaintiff proves that a warning is inadequate, either in content or presentation, a presumption arises that plaintiff would have heeded an adequate warning; (4) the presumption may be rebutted by evidence that any effort to warn the plaintiff would have been futile; (5) whether the presumption has been rebutted is a question of fact for the jury, not a question of law for the court appropriate for determination on a motion for summary judgment.[19]

The court finds that federal cases do not undermine the validity of these conclusions. Kawasaki argues that an issue as to the adequacy of a warning necessarily presup-

---

on the safe handling of batteries even had they been conveyed to him.

*East Penn,* 578 A.2d at 1125.

**19.** The circumstances of this case, where the plaintiff was using a pleasure vehicle, are to be contrasted with the situation that might obtain where a professional fails to read warnings supplied with the tools of his trade. In *Hutchins v. Silicone Specialties, Inc.,* 881 P.2d 64, 67 (Okla. 1993); CCH Prod.Liab.Rep. P13,490, the court held as follows:

> We held in *Duane v. Oklahoma Gas & Electric Co.,* 833 P.2d 284, 287 (Okla.1992), that where a product is used in an industrial setting by one supposedly skilled at his job a manufacturer has "no duty to warn of dangers inherent in the task or which are created by oversight

or negligence of the contractor or fellow employees." A defendant in a manufacturers' products liability case is not liable for misuse of its product in a manner that is not foreseeable. *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okla.1976).

Here, the P–3100 container carried explicit warnings that P–3100 primer was highly flammable, that it should not be used in poorly ventilated areas, and that no flame should be near it. Defendant was entitled to assume that [plaintiffs] would heed its warnings. Defendant was not required to foresee that professional waterproofers would fail to read its warnings, and then use the P–3100 in a manner that the manufacturer's instructions expressly warned against.

poses that the operator has read the warning, citing *Johnson v. Niagara Machine & Tool Works,* 666 F.2d 1223, 1225 (8th Cir. 1981). However, the presumption in *Johnson* must be rebutted by evidence that the plaintiff did not in fact read the warning, which raises the issue of whether or not plaintiff would have read an adequate warning.

Federal courts have also held that it was for the jury to decide whether a plaintiff who did not read a warning actually given would have read an adequate warning, and that a failure to warn claim is not necessarily barred by evidence that plaintiff did not read a warning. *See, e.g., Thornton v. E.I. Du Pont de Nemours & Co., Inc.,* 22 F.3d 284, 289 (11th Cir.1994) (under Georgia law, the general rule is that failure to read a warning is contributory negligence, but failure to read a warning does not bar recovery when the plaintiff challenges the adequacy of efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user); *Hurt v. Coyne Cylinder Co.,* 956 F.2d 1319, 1329 (6th Cir.1992) (under Tennessee law, adequacy of warning is jury question, but where there is no evidence that plaintiff read the warning, and no evidence that inadequacy of the warning was the cause of plaintiff's failure to read the warning, causation has not been shown); *Lakeman v. Otis Elevator Co.,* 930 F.2d 1547, 1553 (11th Cir.1991) (under Alabama law, where there is some evidence that plaintiff would have read and heeded an adequate warning, a jury question is presented on a failure to warn claim even if plaintiff failed to read the actual warning); *Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529, 1538 (D.C.Cir.1984) (holding that satisfaction of the proximate cause requirement does not depend entirely on whether plaintiff read the label: "Instead, if the jury could reasonably have found that the information on an ade-

quately labelled [product] would have been communicated to [plaintiff]—even if he personally did not read the warning—the failure to provide such a warning could validly be treated as a proximate cause of [plaintiff's injury]."); *Rhodes v. Interstate Battery System of America,* 722 F.2d 1517, 1519 (11th Cir.1984) (If defendant did not take reasonable steps to communicate the warning to plaintiff, plaintiff's failure to read the warning would not constitute contributory negligence and failure to read a warning does not bar recovery when plaintiff is challenging the adequacy of the efforts of defendant to communicate the warning to plaintiff; adequacy of warning or its communication are jury questions), *reh'g and reh'g en banc denied; Harrison v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 968, 984 (5th Cir.1978) (under Texas law, failure to read a warning label may establish as a matter of law that a warning, even though negligently inadequate, was not the cause-in-fact of the injury, but the rule is inapplicable where it can be shown that plaintiff's employer did read the warning and it could be presumed that an adequate warning would therefore have been heeded); *Smith v. United States,* 546 F.2d 872, 879 (10th Cir.1976) (whether failure to read warning was a contributing cause or the only proximate cause of the plaintiff's injury was for the jury to decide).

▪ The court therefore concludes that Kawasaki is not entitled to summary judgment on the Rowsons' failure to warn claims. Failure to read the warnings would not bar the Rowsons' warning claims as a matter of law because the Rowsons have pleaded a case that falls within the exception recognized by several courts: he alleges that the warnings were inadequate in presentation and location.[20] *Carruth,* 643 So.2d at 1344;

The trial court correctly granted Silicone Specialties' motion for summary judgment.

20. At the hearing on this motion, Kawasaki argued that even if Rowson did not read the differential warning label on the ATV, his expert's deposition demonstrates that there is no genuine issue of material fact that the "differential label" is adequate in presentation and location. However, the court does not read the expert's testimony as asserting that the "differential label" is

adequate in presentation and location. The expert testified only that "if the reader is interested in knowing something about the differential, that one [the differential label], I think, is conspicuous for that purpose, certainly." Plaintiffs' Supplement To Resistance To Motion For Summary Judgment, Deposition of Dr. Edward Karnes, p. 64, lines 20–23. He did not testify that the warning would have come to any user's attention because of its presentation and location, only to the attention of one "interested in knowing

*E.R. Squibb,* 477 So.2d at 970–71; *Bloxom,* 512 So.2d at 839; *Safeco Ins. Co.,* 515 So.2d at 657; *Pineda,* 578 A.2d at 1124; *Payne,* 486 A.2d at 725; *Bushong,* 311 Ark. at 234, 843 S.W.2d at 811. Kawasaki has not demonstrated that there is no genuine issue of material fact that any warning would have been futile, because Kawasaki has not shown that Rowson routinely ignored or neglected to read warnings, *Bushong,* 311 Ark. at 234, 843 S.W.2d at 811; *Bloxom,* 512 So.2d at 839, or that Rowson had limited education and had difficulty reading such that he would not have heeded a written warning. *Dresser,* 880 S.W.2d at 753. In Iowa, issues of the adequacy of a warning are for the jury to decide, as are questions of causation. *See, e.g., Nichols v. Westfield Indus., Ltd.,* 380 N.W.2d 392 (Iowa 1985) (questions of negligence, contributory negligence, and proximate cause are ordinarily for the trier of fact and even when the facts are not in dispute, if reasonable minds might draw different inferences from the evidence a question of fact is engendered); *Casey v. Koos,* 323 N.W.2d 193, 198 (Iowa 1982) (same); *Meade v. Roller,* 212 N.W.2d 426, 429 (Iowa 1973) (same). Because Rowson has pleaded that the warnings in question were not effectively communicated such that they would have come to the attention of users of the ATV, if the evidence establishes that Rowson did not read the warnings given,[21] trial of the warnings issue will proceed as established in *Bushong, Bloxom,* and *Safeco.* The Rowsons will be entitled to the presumption that Bryan Rowson would have heeded adequately presented warnings; Kawasaki may attempt to rebut that presumption by presenting evidence that any warnings would have been futile.

### C. Bryan Rowson's Failure To Heed An Open And Obvious Hazard

■ Kawasaki argues that it is entitled to summary judgment as a matter of law on the Rowsons' allegations that Kawasaki is liable for for failing to design the Bayou ATV with "roll bars" or "other appropriate crashworthiness features," collectively referred to herein as ROPS, because the lack of such features and the dangers thereby created are an open and obvious condition for which no liability may attach to Kawasaki. Kawasaki cites various cases for the proposition that lack of ROPS on motorcycles and convertible automobiles, and by analogy the lack of such devices on ATVs, is an open and obvious danger for which no liability may attach. *See, e.g., McWilliams v. Yamaha Motor Corp.,* 780 F.Supp. 251 (D.N.J.1991); *Miller v. Todd,* 518 N.E.2d 1124 (Ind.App.1988); *Nicholson v. Yamaha Motor Co.,* 80 Md.App. 695, 566 A.2d 135 (1989), *cert. denied,* 318 Md. 683, 569 A.2d 1242 (1990); *Delvaux v. Ford Motor Co.,* 764 F.2d 469 (7th Cir.1985).

The Rowsons argue, first, that the lack of ROPS does not fit within the Iowa formulation of an open and obvious danger. Second, they argue that Kawasaki fails to address both the design claim, that lack of ROPS was a design defect, and the warnings claim, that Kawasaki should have warned of the danger constituted by the lack of ROPS on the Bayou model ATV. The Rowsons argue that the feasibility of alternative designs is a factor in proving defective design which should not be dismissed by arguments that a danger was open and obvious.

■ The court concludes that although Kawasaki properly states the rule that a manufacturer, designer, or seller of a product cannot be held liable for open and obvious dangers, summary judgment is inappropriate. Whether an open and obvious danger exists, both in terms of a design defect and a duty to warn, and whether the plaintiff appreciated the danger sufficiently to obviate defendant's liability, are questions of fact for the jury.

Few Iowa decisions have considered the "open and obvious danger" defense in prod-

---

something about the differential." *Id.* Had Dr. Karnes in deposition testimony concluded that the differential warning label was adequate in presentation and location, Kawasaki would be entitled to summary judgment regarding any claims arising from the alleged inadequacy of the differential warning label.

**21.** If the evidence demonstrates, and the jury finds, that Rowson did read the warnings, resolving the genuine issue of material fact that Rowson's belated affidavit has generated, Rowson may have no claim of inadequate warnings based on presentation and location that can be submitted to the jury.

ucts liability cases.[22] In *Nichols v. Westfield Indus., Ltd.,* 380 N.W.2d 392 (Iowa 1985), the Iowa Supreme Court, applying Restatement (Second) of Torts § 388,[23] held that

the Restatement rule was only to warn of dangers known to [the defendant] which he had reason to believe would not be realized by persons using the [product].

\* \* \* \* \* \*

We conclude that, under section 388 of the Restatement, a supplier's duty is to warn of dangers which are not obvious with respect to use of the chattel in the condition in which it is supplied. It does not require the supplier to give information concerning available means for amelioration of obvious dangers, even though it is aware of these means and the party to whom the chattel is supplied is not.

*Nichols,* 380 N.W.2d at 400–01. The court held that there was no duty to warn on the part of the defendant in that case because there was no evidence that he possessed superior knowledge over the plaintiff, and therefore he had no duty to warn even if the danger was not open and obvious. *Id.*

 However, where plaintiff demonstrates that he or she had no knowledge of the danger from which harm resulted, a jury question is generated on whether the danger was open and obvious and a warning was required. *See Sandry v. John Deere Co.,* 452 N.W.2d 616, 619 (Iowa App.1989) ("Where risks are known and obvious there is no need for a warning," citing *Nichols,* but holding that a jury question was generated regarding the open and obvious nature of the danger). To prove that the product was defective and unreasonably dangerous, the plaintiff is required under Iowa law to show that the defect was not one contemplated by the user which would be unreasonably dangerous to the plaintiff in the normal and intended use

of the product. *Id.* (citing *Aller v. Rodgers Machinery Mfg. Co.,* 268 N.W.2d 830, 834 (Iowa 1978)). Even if plaintiff knew or may have known of the danger constituted by use of a product, it is for the jury to say whether the plaintiff appreciated the danger sufficiently to obviate the necessity of the warning. *Bandstra v. International Harvester Co.,* 367 N.W.2d 282, 287 (Iowa App.1985).

In the present case, the Rowsons have provided sufficient evidence to raise a jury question on the issue of whether the lack of ROPS on the Bayou ATV was an open and obvious danger requiring a warning. Rowson was not familiar with ATVs, had never ridden one, and such evidence suggests that Rowson, and others like him, would not appreciate the danger sufficiently to obviate the necessity of a warning.

Furthermore, courts have held that whether or not a danger is open and obvious is only one factor in determining whether a product is unreasonably dangerous in design. *See, e.g., Lockley v. Deere & Co.,* 933 F.2d 1378, 1383–84 (8th Cir.1991) (applying Arkansas law and citing with approval cases from other jurisdictions); *Linegar v. Armour of America, Inc.,* 909 F.2d 1150, 1154 (8th Cir.1990) (applying Missouri law, and holding that although not conclusive, the obviousness of a defect or danger is material to the issue of whether a product is unreasonably dangerous; bulletproof vest was held not to be unreasonably dangerous as a matter of law because it protected the areas it was designed to cover and gaps in its coverage were open and obvious).

The Eight Circuit Court of Appeals, applying Missouri law, has held that "[u]nless a court can say as a matter of law that a product is not more dangerous than a reasonable user would have expected, the ques-

---

**22.** Most of the decisions on the doctrine have examined the liability of a possessor of land for open and obvious hazards to an invitee. *See, e.g., Schnoor v. Deitchler,* 482 N.W.2d 913 (Iowa 1992) (under Restatement (Second) of Torts § 343A, possessor has no duty to warn against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them).

**23.** In this regard, the pertinent part of § 388 states that a supplier of a chattel is subject to liability to those whom the supplier would expect to use the chattel if the supplier

(a) knows or has reason to know that the chattel is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition. . . .

tion is one for the jury." *Donahue v. Phillips Petroleum Co.,* 866 F.2d 1008, 1012 (8th Cir.1989) (quoting *Grady v. American Optical Corp.,* 702 S.W.2d 911, 915 (Mo.Ct.App. 1985)). For example, the danger of falling from a forging press was held to be known and obvious as a matter of law, first, because the danger of falling from a height and from a slanted surface with no support was commonly known, and, second, because the plaintiff testified to being familiar with the equipment from which he fell and that he knew that he was working at a dangerous height. *Garnes v. Gulf & Western Mfg. Co.,* 789 F.2d 637, 640 (8th Cir.1986). Furthermore, there was no conflicting evidence to the effect that the danger was *not* open and obvious. *Id.* at n. 4 (citing the Iowa *Bandstra* case cited above and noting that conflicting evidence in that case made for a jury question on the obviousness of the danger).

The Rowsons have argued that the lack of ROPS made the Bayou ATV more dangerous than a reasonable user would have expected, and therefore a jury question is generated. The Rowsons have also argued that the danger posed by the lack of ROPS was enhanced in a way that a reasonable person would not recognize by other hidden defects in the design and performance of the ATV. Plaintiff's expert is expected to testify that control difficulties in the Bayou ATV and its high center of gravity, combined with the lack of ROPS, presented a risk that was not known and obvious. The court believes that enhancement of one danger, which may or may not have been open and obvious, by other hidden factors logically render the danger far greater than a reasonable person could appreciate. *See, e.g., Delvaux v. Ford Motor Co.,* 764 F.2d 469, 474 (7th Cir.1985) (design is unreasonably dangerous only if it presents dangers not apparent to the ordinary consumer or user).

Nor can the court say as a matter of law that the ATV in question here is not more dangerous than a reasonable user would have expected, and a jury question is therefore presented. *Donahue v. Phillips Petroleum Co.,* 866 F.2d 1008, 1012 (8th Cir.1989). It is important to keep in mind that an ATV is purportedly designed for use on rough terrain, not for the on-road use intended for convertibles and motorcycles, to which Kawasaki would have this court find an ATV is analogous. In the cases cited by Kawasaki, the courts held that such vehicles presented an open and obvious risk of injury in collisions because they lacked the safety devices of automobiles or any other structural protection from such injuries. *See Delvaux,* 764 F.2d at 474 (lack of structural protection on convertible Mustang obvious); *McWilliams,* 780 F.Supp. at 259 (dangers of a motorcycle without leg guards or other crash protection are not "circumspect" but instead "are patent"); *Nicholson v. Yamaha Motor Co., Ltd.,* 80 Md.App. 695, 719, 566 A.2d 135, 147 (1989) (fact that motorcycles are not designed with safety features of an automobile held "clear and obvious"), *cert. denied,* 318 Md. 683, 569 A.2d 1242 (1990); *Miller v. Todd,* 518 N.E.2d 1124, 1126 (Ind.App.1988) ("As a matter of law, the absence of crash bars on a motorcycle is an obvious danger to the ordinary user."). All of the vehicles in these cases were intended for on-road use, a circumstance with which average consumers were familiar. Furthermore, the vehicles were also familiar to average consumers, as were the risks of typical accidents, and in each case the risks were considered obvious in comparison to automobiles. *Delvaux,* 764 F.2d at 474; *McWilliams,* 780 F.Supp. at 259; *Nicholson,* 80 Md.App. at 719, 566 A.2d at 147; *Miller v. Todd,* 518 N.E.2d at 1126. The sort of terrain for which an ATV is purportedly designed suggests, a jury could find, that an ATV can successfully negotiate such terrain, and a reasonable user would expect it to do so without unreasonable danger. ATVs are also outside the experience of most consumers, and a ready comparison to a familiar vehicle used in similar circumstances is not available. In *McWilliams* and cases cited therein, the courts considered as a factor in their analysis of the openness and obviousness of the danger posed by motorcycles the familiarity of the plaintiff with the vehicle he was riding at the time of his injury. *McWilliams,* 780 F.Supp. at 258 (citing *Shaffer v. AMF, Inc.,* 842 F.2d 893, 897 (6th Cir.1988), and noting that plaintiff in *Shaffer* had six years of experience riding motorcycles, and the plaintiff in *McWilliams*

had nine or ten years). Rowson, by contrast, had never ridden an ATV before, and testified in deposition that he simply assumed it would be like riding a snowmobile, a kind of vehicle with which he had some experience, but with which this court is not able to conclude there is a sound analogy in light of the very different conditions in which ATVs and snowmobiles are used.

Finally, courts have held that whether or not a danger is open and obvious is only one factor in determining whether a product is unreasonably dangerous in design. *See, e.g., Lockley,* 933 F.2d at 1383–84; *Linegar v. Armour of America, Inc.,* 909 F.2d at 1154. The court in *Lockley* noted the concern of some courts that allowing the open and obvious factor to be the sole criterion in products liability design defect cases might " 'encourage manufacturers to be outrageous in their design, to eliminate safety devices, and to make hazards obvious.' " *Lockley,* 933 F.2d at 1383 (quoting *Forrest City Mach. Works, Inc. v. Aderhold,* 273 Ark. 33, 37, 616 S.W.2d 720, 722 (1981)). This court is unwilling to grant summary judgment on the basis of one factor in the design defect analysis, even were it convinced that it could decide that factor as a matter of law. The court cannot find as a matter of law that the Bayou ATV was not unreasonably dangerous for reasonably foreseeable use on the ground that its lack of ROPS was an open and obvious danger. The lack of ROPS alone and in combination with other factors may have made the Bayou ATV more dangerous than a reasonable user would have expected for its intended use on "all terrain." A jury question is therefore generated.

## VI. CONCLUSION

The court concludes that summary judgment is inappropriate on the issues Kawasaki has presented. Rowson's affidavit filed on October 17, 1994, generates a genuine issue of material fact as to whether or not Rowson read the warnings provided on the ATV in question before riding it. Although as a general rule such a belated affidavit cannot be allowed to generate a fact question, the court finds that the affidavit in question here plausibly explains its discrepancies with prior testimony as the result of Rowson's refreshed recollection of having read some or all of the warning labels, at least in part, prior to his accident. In the alternative, the court concludes that even if it disregards the October 17, 1994, affidavit as creating only a sham issue of fact, Kawasaki's motion for partial summary judgment must still be denied. On the basis of undisputed facts that Rowson did not read any warning labels, which was the circumstance that obtained prior to the belated affidavit, the court's examination of authorities leads it to conclude that failure to read a warning does not as a matter of law preclude a claim of inadequate warnings if the plaintiff's claim is that the warning given was inadequate in presentation and location unless there are no material questions of fact that any warning would have been futile. In this case, Rowson's claim of inadequate warnings was indeed that the warnings given were inadequate in presentation and location and Kawasaki has not shown that there is no genuine issue of material fact that any warnings would have been futile in this case. Finally, the court concludes that Kawasaki is not entitled to summary judgment on Rowson's design and warnings claims on the ground that the lack of ROPS on the ATV in question constituted an open and obvious danger for which Kawasaki cannot be held liable. Under the Iowa formulation of the open and obvious hazard doctrine, the lack of ROPS alone and in combination with other factors may have made the Bayou ATV more dangerous than a reasonable user would have expected for its intended use on "all terrain," and a jury question is therefore generated.

**IT IS SO ORDERED.**